UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-80844-CIV-MATTHEWMAN

ANTONIO RAMOS, individually and
on behalf of all others similarly situated,

    Plaintiffs,

vs.

FLORIDA DRAWBRIDGES, INC.,
d/b/a FDI SERVICES, et al.,

    Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS [DE 32]

THIS CAUSE is before the Court upon Defendants, Florida Drawbridges, Inc, d/b/a FDI Services ("FDI"), Eric Obel, and Laura Porter's (collectively, "Defendants") Motion to Dismiss [DE 32]. The Motion is fully briefed and ripe for review. The Court has carefully considered the Motion and is otherwise fully advised in the premises.

I. Background

On May 10, 2021, Plaintiff, Antonio Ramos ("Plaintiff"), filed his Fair Labor Standards Act (FLSA) Complaint. [Compl., DE 1]. On May 14, 2021, Plaintiff then filed an Amended Complaint before any responsive pleading was filed. [Am. Compl., DE 10]. Defendants filed a motion to dismiss the Amended Complaint [DE 12], and the Court granted the motion in part and denied the motion in part. [DE 24]. The Court explicitly stated, "[t]hus, while the case at hand is only at the motion to dismiss stage, the Court does find that the Amended Complaint is violative of Rule 12(b)(6) as currently drafted and requires additional allegations to support Plaintiff's on-call theory of his entitlement to overtime pay. The Court does not expect Plaintiff to include every

possible relevant fact, however, and is cognizant that this case is not at the summary judgment stage yet. Moreover, the Court finds that dismissal with prejudice would be wholly inappropriate here as amendment would not necessarily be futile." *Id.* at 6-7.

Thereafter, on August 2, 2021, Plaintiff filed a Second Amended Complaint ("SAC") [DE 30]. According to the allegations of the SAC, Plaintiff worked for FDI from October 29, 2019 through early October 2020. [SAC ¶ 8]. During that time, Plaintiff and other similarly situated employees worked as bridge mechanics. *Id.* ¶ 9. Plaintiff is bringing a collective action against FDI for unpaid overtime wages for similarly situated employees who worked for Defendants at any time during the three-year period before the filing of the Amended Complaint through the present. *Id.* ¶10. The SAC alleges that

> While working for FDI, the FLSA Collective Members were employees, as §209 U.S.C. 203(e) defines the term. The Collective members, and RAMOS, were W-2 employees working under the direct supervision of the Company, without the ability to set their own schedules, and were economically dependent on FDI. The Collective Members, due to their on-call schedule, while on call, did not have the ability to seek secondary employment, order a pizza and know they will be home to receive it, eat at a restaurant and know they will still be there when the food comes out, pick up frozen/refrigerated food at the store and know it could be taken home before spoiling. The Collective Members, while on call, could not count on going to the laundromat and know that they would be there when the dry cycle was done, or go to a family event, outside of a very limited geographic area, while on call, go on a boat, or go to a movie and know they will see the whole thing.

*Id.* ¶11.

Plaintiff asserts in the Amended Complaint that, during the relevant time period,

Defendants failed to pay Plaintiff, and the other FLSA Collective Members, for all overtime hours worked in violation of the FLSA. Specifically, the Collective Members, including RAMOS, were unable to use their time off for their own purposes, as they were on call, regularly, and during these on-call times, they were not paid overtime for the time that they were on-call. Nor could they use this time for their own benefit, as they were restricted geographically to an area in which they could quickly respond, to the bridges they were responsible for, at unknowable times, that they may have ended up malfunctioning. When on-call, RAMOS, and

those similarly situated, never knew when they would be called to work, and would have to be at a bridge within thirty minutes, keeping them tightly tied, geographically, to at least three bridges.

SAC ¶ 14. The SAC also alleges that Defendants required Plaintiff, and other FLSA Collective Members, "to be on call and engaged (meaning they could not use the time for themselves that they were on call), twenty-four hours per-day, seven days per week every other week, and twenty-four hours per-day seven days per week on the two other weeks of the month" , but that Defendants failed to pay overtime for this on-call time. *Id.* at ¶ 17. The SAC additionally specifically states that

> 19. The on-call time was compensable because it involved hefty restrictions on the Plaintiff's time, and that of those similarly situated, including severe geographic restrictions on where they could travel. While some were only on call for three bridges, others were on call for more than three bridges, more than thirty minutes from their homes, yet had to report to said bridges within thirty minutes of being called. RAMOS, and those similarly situated, could not venture outside of a half hour's distance from multiple locations. The fixed time limit for responses was too restrictive because it required RAMOS, and those similarly situated, to always be ready to instantaneously respond while on-call. RAMOS had an unduly restrictive amount of time to report to his bridges, while on-call. RAMOS, only had thirty minutes to respond, which severely limited what he could do on call, because he would have to report to a bridge for repairs, basically, the moment he was called, leaving no time to resolve a bill at a restaurant, or politely excuse himself while guests are over, retain supplemental employment, or seek professional certifications, which RAMOS, specifically, asked for time to pursue.
>
> 20. While on-call, RAMOS, and Collective Members, were never free to spend the time as they pleased, because they had no idea when the next emergency repair would immediately call them to work.
>
> 21. The on-call time meant that the Plaintiff, and the FLSA Collective Members, worked more than 40 hours per week, in many weeks, without overtime compensation. Plaintiff, and other FLSA Collective Members, were on duty actively working on bridges for 40 hours per week, but they were on call 24 hours per-day, seven days per week, or four days per week, every-other week, without the ability to use the on-call time as they chose. For example, one cannot go to a movie over the weekend, if one is expected to have a thirty-minute response time to multiple bridges. Hence, each class member on duty for a week of work, and the weekend, plus on call time, was entitled to one-hundred-twenty-eight hours of unpaid overtime per-week. Plaintiff, and other FLSA class members were on call

> every-other weekend, for the two weeks they were not on call during the weekends, they are owed sixty-two-hours of overtime.
>
> . . .
>
> 25. Plaintiff and other FLSA Collective Members are entitled to overtime compensation for their on-call time, which was uncompensated by the Defendants. There were severe restrictions on them geographically, temporally, and from an unduly restrictive amount of time to respond, as they only had a half hour to arrive at a malfunctioning bridge.

*Id.* ¶¶ 19-21, 25.

Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the SAC because, "even if his allegations were 100% accurate, [Plaintiff's] on-call time would not be compensable work time as a matter of law." [DE 32 at 2]. According to Defendants, "[c]ourts have already found as a matter of law that more severe restrictions than those alleged by Plaintiff do not turn on-call time into compensable work time. Accordingly, Plaintiff has not pled a claim for relief." *Id.* at 2. More specifically, Defendants contend that the time, location, and geographical restrictions, the response time, and the potential interruptions alleged in the SAC are insufficient as a matter of law. *Id.* at 3-5. Defendants further assert that the Court should dismiss the case with prejudice now, rather than waiting until the summary judgment stage, pursuant to Fed. R. Civ. P. 8 and the relevant case law. *Id.* at 6-8.

In response, Plaintiff argues that the SAC complies with the Court's prior Order providing Plaintiff with leave to amend his complaint. [DE 34 at 1-3]. Next, Plaintiff argues that "dismissal with prejudice would be highly inappropriate, because, at a minimum, Plaintiff could add more facts, meaning amendment would not be futile." *Id.* at 3. He asserts that Defendants are incorrectly requesting that the Court apply the summary judgment standard at the motion to dismiss stage. *Id.* Plaintiff distinguishes some of the cases cited by Defendants on the basis that each member of the

putative class in this case was "tied to at least three bridges," which involved an "unreasonable mix of a limitation on the time to respond, and the geographic limitations plead on the putative collective." *Id.* at 5. According to Plaintiff, the "facts as to whether the time spent by the Plaintiff was time waiting to be engaged, or engaged to be waiting, are large undetermined at the juncture, and will depend on discovery." *Id.* at 7. Finally, Plaintiff maintains that Defendants have not cited to any cases from the Eleventh Circuit that are at the motion to dismiss phase. *Id.* at 7-8.

In reply, Defendants assert that the SAC must be dismissed because, even if the Court assumes that all of the allegations in the SAC are true, Plaintiff is still not entitled to be paid for alleged on-call time. [DE 35 at 1]. According to Defendants, "Plaintiff's argument that the Court should defer a decision to the summary judgment stage is incompatible with Rule 8, Supreme Court precedent, and Plaintiff's own description of the Court's role at this juncture. Further, Plaintiff provides no authority finding that the questions raised by Defendants' motion must be deferred to summary judgment, and the standards of Rule 12 and Rule 56 belie any such argument." *Id.* at 3.

II.  Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted.

### III. Discussion

In relevant part, the FLSA provides that a covered employer shall not

> employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Accordingly, to state a claim for relief under the FLSA, Plaintiff must simply show "(1) he [was] employed by the defendant, (2) the defendant engaged in interstate commerce, and (3) the defendant failed to pay h[er] minimum or overtime wages." *Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc.*, 494 Fed. App'x 940, 942 (11th Cir. 2012) (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.8 (11th Cir. 2008)). Defendants do not challenge the sufficiency of the Amended Complaint as to the first two elements. Rather, they argue that the Amended Complaint does not provide enough factual detail to support the contention that they failed to pay Plaintiff overtime wages.

The relevant law from the Eleventh Circuit and the Supreme Court states that "on-call time" is "work time" if "the time is spent predominately for the employer's benefit." *Birdwell v.*

*City of Gadsden, Ala.*, 970 F.2d 802, 807 (11th Cir. 1992) (quoting *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944)). Time during which an employee is "engaged to wait", that is, "time spent primarily for the benefit of the employer and his business," is compensable. *See Wantock*, 323 U.S. at 132 (1944). Time in which an employee is "waiting to be engaged," in other words, time that the employee can use "effectively for his or her own purposes," is not. *Lurvey v. Metropolitan Dade Cnty.*, 870 F.Supp. 1570, 1578 (S.D.Fla.1994) (quoting *Halferty v. Pulse Drug Co.*, 864 F.2d 1185, 1189 (5th Cir.1989)). "The question of whether the employees are working during this time for purposes of the FLSA depends on the degree to which the employee may use the time for personal activities." *Birdwell*, 970 F.2d at 807.

"The difference between time 'engaged to wait' and 'waiting to be engaged' is highly fact-specific, and is 'dependent upon all the circumstances of the case.'" *Gregory v. Quality Removal, Inc.*, No. 14-21480-CIV, 2014 WL 5494448, at *9 (S.D. Fla. Oct. 30, 2014) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 136, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). The Eleventh Circuit has held that a district court analyzing this crucial distinction should consider "the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances." *Birdwell*, 970 F.2d at 808 (quoting *Skidmore*, 323 U.S. at 137). Other factors to be considered include "(1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employees' movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time." *Lurvey*, 870 F.Supp.

at 1576 (citing *Owens v. Local No.* 169, 971 F.2d 347, 350 (9th Cir.1992)). "It is for the court to determine if a set of facts gives rise to liability; it is for the jury to determine if those facts exist." *Id.* (quoting *Birdwell*, 970 F.2d at 807–08).

The Court notes that the Eleventh Circuit cases relied on by Defendants in their Motion were decided after the motion to dismiss phase. Those cases all involve appeals of jury verdicts, judgments, and/or orders on motions for summary judgment. The three cases Defendants cited that actually involve dismissal with prejudice at the motion to dismiss stage—*McCray v. Ace Parking Mgmt., Inc.*, 453 F. App'x 740, 741 (9th Cir. 2011), *Donato v. Serv. Experts, LLC*, No. 17-CV-436, 2018 WWL 4660374, at *5 (N.D.N.Y. Sept. 28, 2018), *Perez v. Banana Republic, LLC*, No. 14-CV-01132, 2014 WL 2918421, at *6-7 (N.D. Cal. June 26, 2014)—are from outside of this Circuit and thus are not binding on the Court. The Court does not find those three opinions to be particularly persuasive.

The Court has reviewed the case law provided by Defendants and is fully apprised of their position. However, at this juncture, and upon very careful review of the allegations in the SAC, the Court finds that the SAC contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Furthermore, the on-call time analysis, i.e., the "engaged to wait" versus "waiting to be engaged" analysis, is highly fact-specific and is very clearly more appropriate to decide at the summary judgment stage after the completion of the discovery process.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss [DE 32] is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 21st day of September, 2021.

*William Matthewman*
WILLIAM MATTHEWMAN
United States Magistrate Judge