UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANTONIO RAMOS, Individually,
Collectively and On Behalf of All
Others Similarly Situated, Pursuant
to 29 U.S.C. §216.

Case No. 9:21-cv-80844

Plaintiff,

v.

FLORIDA DRAWBRIDGES INC.,
d/b/a FDI SERVICES, ERIC OBEL &
LAURA PORTER,

Defendants.
_____/

## PLAINTIFF'S VERIFIED MOTION FOR ATTORNEYS' FEES

Plaintiff, by and through undersigned counsel, as the prevailing party in an action brought pursuant to the Fair Labor Standards Act ("FLSA"), hereby move for reasonable attorneys' fees in the amount of $90,165.00[1], pursuant to the settlement agreement, and 29 U.S.C. 216(b), and in support thereof state;

### OVERVIEW

This action involved a unique claim for on-call overtime, which attempted to challenge the state of the law, and bring it into the 21st Century. We will not know whether this Court would have distinguished the law in its order on summary judgment, as the Plaintiff decided when to settle, and the Plaintiff insisted on settling days before his deposition.

---

[1] This is the amount sought for everything up until the drafting of this motion. A supplement will be submitted for the time post-case negotiating, or litigating, fees. This also represents the Plaintiff cutting his own hours by about 22%. *See* Exhibit A, Summary of Fees.

1

Very few, if any, other FLSA lawyers in the market would file and pour hundreds of hours, into a case where surviving summary judgment depends on modernizing the existing precedent favorably. This was not just another FLSA case in a crowded field of FLSA cases.

This action involved complex matters of law, first impression, competing versions of the facts, and hundreds of hours of work, as Defendants did their job well, and made nothing easy; "[t]he [defendant] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 956 (E.D. Wis. 2003) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 580-581, n. 11, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986)).

Hence, the time and labor required was significant. The novelty and difficulty of the case is clear, involving two motions to dismiss, and a motion to compel discovery on an issue of first impression, which took significant skill and time. The attorneys on the case also did not take other work that was non-contingency based to make time for this action. The case was highly undesirable in that it required a drastic modification of existing law to succeed.

The experience of lead counsel, Joshua H. Sheskin, is significant, appearing on hundreds of Federal Dockets focusing on labor and civil rights law. Joshua H. Sheskin has trial experience in FLSA cases, and FLSA Appellate Experience in the USCA for the 11th Circuit.

Joshua M. Bloom has been a member of the bar since 2011, and has ample amounts of experience in FLSA litigation, including several trials. Associate, George E. Dahdal, was billed at $175 per hour, considering his lack of reputation, and experience, which is more than a reasonable rate for a new attorney working under supervision.

The Plaintiff believes that billing judgment is key and have cut their hours on their own by about 22%, for everything leading up to the drafting of this motion, by "No Charging" hours that

were worked, but could be seen as a bit overkill. Hence, Plaintiff worked 337.8 hours and are only looking for 261.6 hours of compensation, for a total of $90,165.00.

While a good faith basis existed in law for the claim and to modify the law, when faced with Plaintiff's claims, Counsel assumed a giant risk by applying a part of the FLSA usually used on nannies, to bridge maintenance workers, and agreed to move forward in a fashion where recovery of fees was in no way guaranteed, or, necessarily, probable. Lead Counsel has experience in multiple cases using on-call time claims, while for Opposing Counsel this was their first on-call time case, as well as the Court's, which shows how novel this action was.

## MEMORANDUM OF LAW

### *Standard of Law*

The Court approved the settlement agreement, which awarded the Plaintiffs damages, and, also, acknowledged that Plaintiff's Counsel is entitled to reasonable fees and costs (*See* D.E. – 64 at ¶4), and, therefore, Plaintiff is the prevailing party, and his counsel is entitled to reasonable fees and costs.

> " In the case at hand, the Court granted Plaintiff's Motion for Approval of Settlement awarding Plaintiff a fair and reasonable settlement, so he is the prevailing party under the FLSA statute and is entitled to recover reasonable attorney's fees. *See Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1167 (S.D. Fla. 2003). "

*Johnson v. Bay Bays Chicken & Waffles, LLC*, 17-80021-CIV, 2017 WL 5952895, at *2 (S.D. Fla. Nov. 6, 2017)(Matthewman, J.).

A reasonable hourly rate is calculated based on twelve factors.

> ""In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). These factors are:

3

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
> *Id.* at 1350 n. 2 (citation omitted)."

*Asbun v. Resende*, 15-61370-CIV, 2016 WL 7635459, at *5 (S.D. Fla. Sept. 26, 2016)(Matthewman, J.).

The Burden is on Plaintiff's Counsel to establish entitlement, hourly rates, and the reasonableness of the time expended.

> "The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d at 1303. That burden includes "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity.... A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." *Id.* (citations omitted). 168 F.3d at 427."

*Id.* at *5–6.

Once the Plaintiff's Counsel meets its burden the burden shifts to the opponents to make precise objections.

> "When responding to motions for attorney's fees, opponents are required to lodge specific objections to any requests. *See Barnes*, 168 F. 3d at 427 (stating that objections from fee opponents must be to be specific and "reasonably precise"); *Norman*, 836 F. 2d at 1301 ("[a]s the district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary, so should the

> objections from fee opponents.") Failing to lodge specific objections is generally deemed fatal. *See, e.g., Gray v. Lockheed Aeronautical Sys. Co.*, 125 F. 3d 1387, 1389 (11th Cir. 1997); *Scelta v. Delicatessen Support Srvcs. Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002)."

*Johnson v. Bay Bays Chicken & Waffles, LLC*, 17-80021-CIV, 2017 WL 5952895, at *3 (S.D. Fla. Nov. 6, 2017)(Matthewman, J.).

Hours expended in the process of obtaining fees, are compensable, but Plaintiff's hope is to keep them to a minimum.

> "The Eleventh Circuit has held that "fees on fees" are compensable. *See Norelus v. Denny's, Inc.,* 628 F.3d 1270, 1301 (11th Cir. 2010), *see also Williams v. R.W. Cannon, Inc.,* 657 F. Supp. 1302, 1318 (S.D. Fla. 2009) (awarding fees to party for filing post trial motion on fees)."

*Touzout v. Am. Best Car Rental KF Corp.*, 15-61767-CIV, 2017 WL 5957664, at *9 (S.D. Fla. Nov. 30, 2017)(Matthewman, J.).

### *The Johnson Factors*

**(1) The Time and Labor Required**

This was a unique case, which involved issues of first impression, two motions to dismiss, several discovery disputes—one of which involved a hearing, several in depth conferrals with Defendants' Counsel, Defendants changed the deposition dates multiple times, and Defendants changed corporate representatives merely two days before depositions of the Defendants began.

There were two cases, consolidated for discovery purposes, however, the cases have separate, and different, responses to the motions to dismiss. This was not done for the sake of adding to the bill, as moving this case beyond the motion to dismiss phase was a trench battle between talented attorneys on both sides.

Written discovery was extensive on both sides, requiring Plaintiff's Counsel to handle extensive discovery with an inexperienced Plaintiff, the production of documents, including extensive bank records, and the review of the Defendants' thousand-plus pages of documents.

Similarly, the conferral process was so thorough between the parties on Plaintiff's issues with Defendant's discovery responses, that the complex dispute was settled through conferral at length, thus obviating the need to waste of judicial resources. Similarly, the conferral between the parties narrowed the issues for hearing on Defendant's Motion to Compel. Same was an issue of first impression as the Court acknowledged. Again, talented lawyers on both sides skillfully argued in what was a time-consuming battle, on an issue of first impression.

Also, each party had to prepare to get exact language out of the deponents in deposition to win at trial or survive summary judgment. Plaintiff attributes the briefness of the two depositions of Defendants, Laura Porter and FDI, which did take place to extensive planning and preparation, which allowed Plaintiff to obtain the concessions, needed to survive summary judgment, quickly. Plaintiff, for example, employed color-coded questions and summary judgment check off lists, to keep the depositions to only the material necessary to lock each deponent into their position and extract key concessions for summary judgment.

Equally aware that the Defendant's Attorneys are as talented as the Plaintiff's Attorneys, the Plaintiff was prepared for deposition in the most thorough of ways, especially with the Plaintiff's unfamiliarity to the deposition process. There were five preparation sessions that lasted hours, and included mock deposition examination, document review, homework for the Plaintiff, summary sheets, the display of exhibits, and extensive group instruction.

Plaintiff was well prepared for his deposition. It is not that there was anything wrong with the preparation which caused Plaintiff to not want to continue through depositions. It was, rather,

that he started missing work, feeling the consequences, and realizing how much more work he would have to miss, for what was not a guarantee, but almost a guarantee that if he succeeded there would be an appeal to delay recovery even further.

The Defendants asked extensive information and documents in their discovery to Plaintiff who was unaccustomed to how discovery works. As a result, the hours expended in discovery explaining interrogatories, explaining requests to produce, explaining that answering was not optional to certain requests, getting the information for the requests to produce, and compiling everything together comprehensibly, were significant. The Defendants cannot, now, legitimately object about the time taken in discovery, when they served such onerous requests.

What was time intensive, and partially reflected on the bill, is a very involved client who insisted that he be constantly updated and had constant questions about the litigation process. It is hard to believe but a significant portion of the time answering the Plaintiff's questions, and keeping him updated, is not reflected in billing, as, admittingly, client communication became an excessive burden on the Plaintiff's Counsel, but such excess would be unfair to charge to Defendants.

**(2) The Novelty and Complexity of the Issues Presented & (3) The Skill Required**

This Court recognized the novelty and complexity of some of the issues presented as issues of first impression. The action set out to make new law the day it was filed and the complexity and novelty of that cannot be underestimated.

Responses to Motions to Dismiss were briefed as if the Motions to Dismiss were summary judgment motions, with Defendants relying, strictly, on precedent from summary judgment orders. Neither party had precedent, from a case on point, to contradict the other side. Therefore, both sides had to apply precedent from dissimilar cases, to competently brief and argue their positions, and turned into an arduous battle of talented attorneys on both sides.

Similarly, the discovery hearing presented issues of first impression for which there was no precedent, which required both parties to skillfully argue their positions in writing, and in person at the hearing. The Defendants put up quite the fight, and the Plaintiff adopted a skillful argument which conceded the point the Defendants were trying to make in discovery but argued that same was irrelevant.

A lot of time is billed on this matter, however, the matter demanded same, because it is novel and complex. Any time that one tries to change existing law, to do so is both novel and usually complex.

This was not a garden variety FLSA case which a hundred lawyers in South Florida could or would have taken. This was a novel idea to expand the law regarding on-call time, and there are not many attorneys who would have seen the opportunity to change the law, known what to do with it, and taken it.

Plaintiffs received a request for a demand. Plaintiff made that demand and made the effort to call Defendants' Counsel and tell them that this was a very preliminary number, and not to get sticker shock, because there was plenty of room in that number. Defendants chose not to respond to the number at all. Had the Defendants responded to that number, Plaintiffs were ready to cut their number significantly, however, Defendants did not respond to that number, or offer any other effort towards settlement, until after depositions had started.

There was a chance this case would change how a whole sector of the economy is paid, and Plaintiff's Counsel was ready to bring about that change, but Plaintiffs decide when to settle cases. The skill required to litigate the novel and complex issues in this action cannot be overstated, and are reflected in Plaintiff's billing on the case.

**(4) The Preclusion of Employment by the Attorney Due to Acceptance of the Case;**
**(5) The Customary Fee; (6) Whether the Fee is Fixed or Contingent; (8) the amount**

8

**involved and the results obtained; and (9) the experience, reputation, and ability of the attorneys**

Taking on this action was a significant sacrifice for the Partners involved, Joshua H. Sheskin, Esq., and Joshua M. Bloom, Esq., who could have been billing on hourly cases, at rates between $350.00 and $650.00, depending on the client, for most of the time they were working on this contingent action. Mr. Sheskin was an Associate during the beginning of this case and became a Partner at Lubell Rosen a year ago. Mr. Bloom has been a successful partner at Lubell Rosen for several years. Mr. Dahdal, the associate in this action, billed his time slightly above that of a paralegal, at $175 an hour, since he received his SDFL Admission, and Bar Admission, last year.

Mr. Sheskin was admitted to the Bar in 2011, he appears on almost 400 Federal Dockets (according to Westlaw), has tried FLSA cases, and appears on multiple FLSA Appellate Dockets, having fully briefed more than one of those appearances, and presented two oral arguments. Mr. Sheskin started as a criminal defense attorney, actively trying murder cases, since turning to civil cases, approximately has made FLSA, and Civil Rights Law, a large part of his practice, and a solitary focus for years when making the switch from criminal trial practice. Mr. Sheskin is a partner at Lubell Rosen, LLC., where he started as an associate handling FLSA and ADA matters in 2017. Before that, Mr. Sheskin worked at two FLSA focused firms, Saenz & Anderson, and J.H. Zidell, P.A. Mr. Sheskin's first FLSA case was in 2013.

Mr. Bloom has been practicing law since early 2011. He has spent almost his entire career with Lubell Rosen, and he has taken several FLSA cases to trial (including a trial where he beat Lead Counsel, while Lead Counsel was at another firm). Mr. Bloom has been involved in many FLSA cases and has focused his career on complex litigation, Health Law, Labor Law, and Civil Rights law.

9

Mr. Dahdal started practicing in 2021, and his rate reflets same. Mr. Dahdal was only charged at $175 per hour, which is a more than reasonable rate for a person practicing in their first year, under supervision. Mr. Dahdal was instrumental in the case, completing most of the initial discovery, helping to prepare clients for depositions, and in helping to form arguments which would go on to win the Discovery hearing, which he also attended.

> "The Court notes that the lack of an expert affidavit in support of the claimed rate is not fatal. After all, "the court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (citations omitted)."

*Rowett v. Wish Wash 2 LLC*, 16-81904-CIV, 2018 WL 4869441, at *3 (S.D. Fla. Sept. 20, 2018)(Matthewman, J.).

In *Rowett*, this Court found an attorney of similar experience to Mr. Sheskin, and Mr. Bloom, to have a market rate of $350 per hour. This is the rate Mr. Bloom is asking for. Mr. Sheskin is asking for a slightly higher rate of $400 per hour, due to the complexity of the matter and the novelty of the matter, and Mr. Sheskin's prolific FLSA experience. Mr. Sheskin understands if the Court wishes to cut his rate, however, Mr. Sheskin believes his rate is justified by the difficulty, novelty, and complexity, of this action, along with his experience.

This Court made severe cuts in the attorneys' fees award in *Asbun v. Resende*, 2016 WL 7635459 (S.D. Fla. Sept. 26, 2016), however this action is highly distinguishable. In *Asbun*, this Court was dealing with a simple FLSA case settled before the filing of an answer, in which the attorneys showed no billing judgment at all. Additionally, a large part of the bill was incurred after settlement, and unreasonable amounts of time were spent on things that were not needed or were just clear exaggerations, or guesses. Unlike *Asbun*, Plaintiff kept contemporaneous records during the course of the case, and then cut the hours significantly to show billing judgment.

The action at bar was a pitched battle between talented lawyers on both sides, dealing with anything but a simple, or garden variety, FLSA Case. While recovery was limited, that did not affect the amount of time it took to receive any recovery at all, as Defendants did their job well, and made every step a skillful war between the talented attorneys on both sides. There is no question that the level of the litigation, skill, and strategy in this action transcended everyday FLSA Actions. This action is very different than *Asbun*, and, while Plaintiff's Counsel accepts that its hourly rates and/or hours will be cut by the Court, there is no reason for the deep cuts found in *Asbun*.

Yes, this Court, historically, has considered as a major factor in determining fee entitlement the results obtained, and in this action the results were not ideal. However, in this action the decision to settle for the amount offered, belonged solely to the Plaintiff, who chose to accept same. While the Plaintiff made the informed choice not to continue, the action took significant work. By the time there was a settlement, there were already two depositions taken, four days of deposition preparation, and a fifth was in progress. The Defendants moved to dismiss twice, there were several discovery disputes including a hearing, Defendants moved the dates of depositions several times, and changed their corporate representative less than two days before the depositions of Defendants started. Defendants created the enormous amount of work at issue, which, granted, is their job. However, they cannot now complain about the work it took to prosecute the case, to the point it was.

> " Fee awards, however, should not simply be proportionate to the results obtained by the Plaintiff. *Andrews v. United States*, 122 F.3d 1367, 1376 (11th Cir.1997) (citing *Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)). As this Court has noted before, " '[g]iven the nature of claims under the FLSA, it is not uncommon that attorneys' fee requests will exceed the amount of judgment in the case.' " *Tyler v. Westway Auto. Serv. Ctr., Inc.*, 133 Fed.Appx. 604, 2005 WL 1208573, *9 (S.D.Fla.2005)

> (quoting *Holyfield v. F.P. Quinn & Co.,* 1991 WL 65928, *1 (N.D.Ill. April 21, 1991) (court awarded approximately $7,000 in fees even though the judgment was only $921)); *see also Davis v. Locke,* 936 F.2d 1208, 1215 (11th Cir.1991) (quoting *Rivera,* 477 U.S. at 574, 106 S.Ct. 2686) (" 'Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms.' ")."

*James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1347, (S.D. Fla. 2007).

> "As for the Defendant's argument that the lodestar fee award should be reduced further, this Court is unpersuaded. The Defendant's vigorous defense meant that Plaintiff's counsel had to expend more hours in order to prosecute their claims. See James v. Wash Depot Holdings, Inc., 489 F.Supp.2d 1341, 1353-54 (S.D. Fla. 2007). The Defendant may not complain about the present results now"

*Beckford v. Dept. of Corrections, Fla.*, 06-14324-CIV, 2008 WL 11333851, at *3 (S.D. Fla. Sept. 8, 2008).

### (7) Time limitations Imposed by The Clients or the Circumstances

There were not many time limitations imposed by the Client, except that settlement be made before depositions, a last-minute decision, which led to a lower settlement amount. The Court put forth a scheduling order which needed to be followed, but that is normal in a FLSA case, and that did not create much pressure on the Plaintiff.

### (10) The Undesirability of the Case

This case was undesirable to say the least. Had a typical FLSA Plaintiffs case come along, it would have been far more desirable. However, a case in which the contingency is changing the law, is not an attractive endeavor unless the change is certain, which in this action it was not.

### (11) The Nature and Length of the Professional Relationship with the Clients

Plaintiff's Counsel did not know the Plaintiff before the initiation of this action. However, the relationship did become complex as clients required constant updates throughout the

proceedings. Plaintiff requested and required constant updates, and every time there was an event, it was a matter of one email informing him what happened and getting three to four emails back with questions, coupled with several calls to explain same.

The client has a right to be informed of the status of his case, and updated, and can ask questions, according to Florida Bar Rules. While it is true that there is a lot of time billed for client communication, it is also true that the Client was entitled to the updates, and to their questions. The three Florida Barred attorneys who handled this case, had to answer all questions, and respond to all emails, because that is what the Rules Regulating the Florida Bar demand. Further, the lack of experience in the litigation process required more meticulous explanations and answers to the Plaintiff's questions and concerns. However, if the Court wished to cut some of this time, then the Plaintiff's Counsel would be more than understanding, as Plaintiff's Counsel concedes that the Plaintiff's demands for communication were significantly more time consuming than in most FLSA cases. On the other hand, the Plaintiff's Counsel urges the Court to consider the requirements to communicate to an involved Plaintiff, the status of their case, and answer any questions related to same.

### (12) Awards in Similar Cases.

Plaintiff takes the position that none of the opinions, which can be found on Westlaw, of this Court, can be compared to this case, because this case presented a novel and complex issue, whereas the opinions found on Westlaw constitute garden variety FLSA cases. Plaintiff has little to go off of, as this Court has awarded a wide variety of amounts, in garden variety FLSA cases, which this was not.

> "The Supreme Court has noted that "complex civil litigation involving numerous challenges to institutional practices or conditions ... is lengthy and demands many hours of lawyers' services." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

*Camp v. City of Pelham*, 2:10-CV-01270-MHH, 2015 WL 12746716, at *3 (N.D. Ala. Dec. 16, 2015).

This action was complex and involved challenges to the way in which an entire portion of the workforce is paid, therefore expending numerous hours on same is justified. There is a lack of precedent available for FLSA fee awards in cases that involve complex and novel issues; this shows exactly how novel the Plaintiff is for bringing this claim, as it appears that the vast majority of FLSA cases are limited to non-novel or complex issues.

### *Billing Judgment*

The most important thing a Plaintiff can do when petitioning for fees is exercise billing judgment. There is no question that the time spent on each phase of the litigation in the summary was the time spent on that phase of the litigation. However, not seeing a reason to seek fees that the Court would be fair to cut, Plaintiff has already cut its bill significantly, as can be seen from the summary itself. *See,* Exhibit A, Summary of Fees.

As the Court can see, Plaintiff voluntarily cut 76.2 hours from the amount they are seeking in fees, so the Plaintiff is seeking a total of 337.8 hours, minus 76.2 for a total of 261.6 hours, prior to the authorship of this motion, which Plaintiff will supplement hours for separately. Hence, Plaintiff cut his hours by about 22% on their own. *See*, Exhibits A & B. An almost twenty percent cut was considered, by Plaintiff, to be appropriate, considering the results obtained, and what is fair to bill to the other party, as explained above and below.

The time that was cut from the bill, and No Charged, is for time that would be fair to bill to a client, like the substantial time spent preparing for depositions, especially with the last-minute date and deponent changes by the Defendants. However, while Defendants created some part of the overage of hours taken to prepare for their depositions, the fact is that most of the charged for

preparation, was not used in a deposition, because only two of the Defendants were deposed prior to settlement. Hence, Plaintiff voluntarily is cutting the hours it took to prepare for Defendants' Depositions in half.

The Depositions were difficult to prepare for, as Defendants often changed the deponents, dates, and order, of depositions. Additionally, Plaintiff's Counsel wanted to be prepared for the depositions to the point of keeping them incredibly short, revealing very little, while getting the information needed to lock the Defendants into a story, and survive summary judgment.

This was also an incredibly complex case, with a lot of moving parts, and a goal to keep billing down by giving what could be assigned to George E. Dahdal, Esq., at his significantly lower billing rate. This required many inter-office meetings, to discuss assignments and strategies, however, the Plaintiff also cut this time down. Nevertheless, due to the complexity of the case and skill of opposing counsel, there were many required inter-office strategy meetings, and many interoffice planning of next steps, in which all lawyers participating made individual contributions.

Next there was a cut to the time spent evaluating the Defendants' Discovery Responses. It did take as long as was billed, without the reduction, and multiple reviews were necessary to catch all relevant information. Defendants produced over 700 pages of discovery at first, and then after conferral produced more. However, not nearly as much time would have been spent reviewing discovery if Plaintiff's Counsel was not trying to change the law, given that opportunity did not arise, as the client chose to settle, Plaintiff's Counsel found it unfair to charge for all the time it took.

Additionally, this case involved an unsophisticated client who was not accustomed to being deposed, or formally questioned. It took significant amounts of time to prepare them for deposition. Some of that time, though, was not charged for, because, ultimately, none of them were deposed,

as they chose to settle before depositions. It would be fair to charge a client for the preparation put in while trying to settle, however, ones adversary deserves some up side for amicably coming to a resolution.

### *Plaintiffs Have No Desire to Extend the Litigation Over Fees, or Turn Same into Its Own Action*

The common mistake which many FLSA Plaintiffs, and Defendants, make is to turn the determination of fees into its own separate action, expending countless months debating what is fully in the discretion of the Court. As this Court's expertise will, ultimately, determine the reasonable amount of fees, there is no need to overdo what should be simple. This Court is aware of the novelty and complexity of the litigation, along with the extensive talent, and work, it took on both sides of the isle. Plaintiff's Counsel understands some of its hours, and hourly rates, may be cut at the discretion of the Court. Plaintiff's Counsel trust the Court to use its expertise without the need for extensive fee litigation, or experts.

WHEREFORE, Plaintiff requests that this Court enter an order and judgment in favor of Plaintiffs and against Defendants for the attorneys fees sought herein in the total amount of $90,165.00, as well as any other relief deemed fair and just.

DATED this __8th_ day of September 2022

### RULE 7.3(b) CERTIFICATION

Pursuant to Local Rules 7.3(a)(8), 7.3(b), and 7.1(a)(3), Plaintiff's undersigned counsel has conferred with counsel for Defendants in a good faith effort to resolve this dispute. Defendants have not agreed to fees Plaintiff's seek herein.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by on this

9th day of September 2022 on all counsel or parties of record in this action via transmission of Notices of Electronic Filing generated by CM/ECF.

### RULE 7.3(a)(7) VERIFICATION

**I HEREBY CERTIFY** that on this 8th day of September, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, personally appeared Joshua H. Sheskin, individually to me known to be the person described in and who executed the foregoing instrument, who is personally known to me or has provided Driver's License as identification, and who acknowledged before me that he executed the same.

**WITNESS** my hand and official seal in the County and State last aforesaid this 8th day of September 2022.

Joshua H. Sheskin, Esq., Lead Plaintiff's Attorney

Notary Public, State of Florida
My Commission Expires:

BREANNA LEE GOTAY-FUENTES
Notary Public - State of Florida
Commission # HH 297950
My Comm. Expires Aug 7, 2026
Bonded through National Notary Assn.

LUBELL & ROSEN, LLC
200 S. Andrews Ave, Suite 900
Fort Lauderdale, Florida 33301
Phone: (954) 880-9500
Fax: (954) 755-2993
E-mail: jhs@lubellrosen.com
ged@lubellrosen.com
jmb@lubellrosen.com

By: */s/Joshua Sheskin*
Joshua H. Sheskin, Esquire
Florida Bar No. 93028
George E. Dahdal, Esquire
Florida Bar No. 1031644
Joshua M. Bloom, Esquire

17

Florida Bar No. 88559